**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PRESBYTERIAN HEALTHCARE SERVICES,
a New Mexico nonprofit corporation,

        Plaintiff,

v.                                                          No. 1:19-cv-00952-WJ-JFR

FACTORY MUTUAL INSURANCE COMPANY,
a/k/a FM Global, a Rhode Island limited liability
company,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## and
## GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon cross-motions for summary judgment: Defendant Factory Mutual Insurance Company's Motion for Summary Judgment, filed November 2, 2020 (**Doc. 50**) ("FMI Motion") and Plaintiff Presbyterian Healthcare Services' Phase I Motion for Partial Summary Judgment, filed November 2, 2020 (**Doc. 51**) ("PHS Motion"). Having considered the parties pleadings and the applicable law, the Court finds that the FMI Motion is not well-taken and is therefore DENIED. In contrast, the PHS Motion is well-taken and is therefore GRANTED.

**BACKGROUND**

### I.    Procedural History

This action centers on an insurance claim related to an August 31, 2013 failure of the electrical system at Presbyterian Hospital ("the Hospital") in downtown Albuquerque, New Mexico, and the resulting replacement of the Hospital's electrical infrastructure. Plaintiff

1

Healthcare Services ("PHS") held property insurance via Policy No. UC211 (the "Policy"), which was issued by the Defendant, Factory Mutual Insurance Company ("FMI"). In November of 2017, after a lengthy investigation, FMI determined that the Policy did not cover certain upgrades to the Hospital's electrical system and denied coverage for those portions of PHS's claim. PHS disputed this denial of coverage and filed its Complaint against FMI in state court on August 30, 2019.[1] The Complaint contains three counts: Breach of Contract and the Covenant of Good Faith and Fair Dealing (Count I); Violation of the New Mexico Insurance Code (Count II); and, Violation of the New Mexico Unfair Practices Act (Count III). Docs. 1-1 & 19.[2] FMI removed the action pursuant to 28 U.S.C. § 1441(b), invoking this Court's original jurisdiction under 28 U.S.C. § 1332. Doc. 1. In its Answer, FMI asserts, among other defenses,[3] that PHS's claims are barred by a "time-to-sue" provision in the Policy. Doc. 24 at 8–9.

## II.    Facts[4]

FMI issued the Policy to PHS in September of 2012. FMI SUMF ¶ 1. The Policy contained, in relevant part, a "Demolition and Increased Cost of Construction" ("DICC") provision and a "time-to-sue" provision. The DICC provision states that the Policy covers the reasonable and necessary costs incurred to satisfy the minimum requirements of the enforcement of any law or

---

[1] *See* Doc. 1-1 (original complaint filed in the 2nd Judicial District Court Bernalillo County, case no. D-202-CV-2019-06836).

[2] On November 8, 2019, PHS amended its Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1). Doc. 19. The Amended Complaint contains the same causes of action, and these claims relate back to PHS's original filing under Fed. R. Civ. P. 15(c).

[3] FMI's Answer also asserts that the Amended Complaint fails to state a claim upon which relief may be granted. Doc. 24 at 7. On October 24, 2019, FMI filed a motion to dismiss, arguing that PHS's suit is time-barred by the Policy's time-to-sue provision. Doc.15. However, FMI withdrew this motion on December 4, 2019, before the Court issued a ruling thereon. Doc. 22.

[4] The Court cites to each party's Statement of Undisputed Material Facts ("SUMF"). References to supporting exhibits are omitted, since they can be found in the motions for summary judgment (Docs. 50 & 51).

ordinance regulating the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment at an insured location. Such law or ordinance must be in force on the date of insured physical loss or damage and its enforcement must be a direct result of such insured physical loss or damage. Under certain circumstances, the DICC provision provides coverage for the cost of demolishing physically undamaged portions of an insured property and rebuilding these portions in a manner to satisfy the law being enforced. FMI SUMF ¶ 2; PHS SUMF ¶ 5.  The "time-to-sue" provision states, in relevant part, "No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless. . . legal action is started within twelve months after inception of the loss." FMI SUMF ¶ 3.

The inception of loss in this case occurred on Saturday, August 31, 2013 at approximately 10:00 a.m., when the incoming power to the Hospital shut off, causing loss of electrical power. When Hospital staff and utility personnel worked to reestablish power, their efforts resulted in an explosion in the Hospital's power distribution and grounding system. *Id.* ¶ 4–5. PHS claims that to comply with all current safety standards and regulations, it was required to redesign and update its entire electrical system configuration in a manner that separated the normal and emergency power systems, which included replacing equipment that did not sustain direct physical damage from the August 31, 2013 event. *Id.* ¶ 6. PHS took the position was that it was required to comply with these regulatory provisions even if not directly ordered to do so. PHS SUMF ¶ 14. FMI took the position that the DICC provision did not provide coverage for the updating the reconfiguration of undamaged equipment unless and until an "Authority Having Jurisdiction"  issued an order requiring implementation of an applicable code or ordinance. *Id.* ¶ 15; FMI SUMF ¶ 13. PHS


ordinance regulating the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment at an insured location. Such law or ordinance must be in force on the date of insured physical loss or damage and its enforcement must be a direct result of such insured physical loss or damage. Under certain circumstances, the DICC provision provides coverage for the cost of demolishing physically undamaged portions of an insured property and rebuilding these portions in a manner to satisfy the law being enforced. FMI SUMF ¶ 2; PHS SUMF ¶ 5.  The "time-to-sue" provision states, in relevant part, "No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless. . . legal action is started within twelve months after inception of the loss." FMI SUMF ¶ 3.

The inception of loss in this case occurred on Saturday, August 31, 2013 at approximately 10:00 a.m., when the incoming power to the Hospital shut off, causing loss of electrical power. When Hospital staff and utility personnel worked to reestablish power, their efforts resulted in an explosion in the Hospital's power distribution and grounding system. *Id.* ¶ 4–5. PHS claims that to comply with all current safety standards and regulations, it was required to redesign and update its entire electrical system configuration in a manner that separated the normal and emergency power systems, which included replacing equipment that did not sustain direct physical damage from the August 31, 2013 event. *Id.* ¶ 6. PHS took the position was that it was required to comply with these regulatory provisions even if not directly ordered to do so. PHS SUMF ¶ 14. FMI took the position that the DICC provision did not provide coverage for the updating the reconfiguration of undamaged equipment unless and until an "Authority Having Jurisdiction"  issued an order requiring implementation of an applicable code or ordinance. *Id.* ¶ 15; FMI SUMF ¶ 13. PHS

sought the full cost of this reconfiguration in its property damages claim (hereinafter, the "disputed portion of the claim").[5] PHS SUMF ¶ 14.

George Retamoza was FMI's adjuster for this claim. *Id.* ¶ 21. FMI investigated the disputed portion of the property damage claim for several years. FMI SUMF ¶¶ 7–20. Correspondence between the parties shows that PHS made several substantive attempts to provide documentation supporting its position that the DICC position covered its reconfiguration of the Hospital's electrical infrastructure. With each round of correspondence, FMI indicated that it would review the submitted documentation. FMI regularly asked for more information and even scheduled teleconferences and in person meetings to discuss the disputed portion of the claim. Finally, on November 14, 2017, FMI sent a letter notifying PHS that the information and documentation provided did not satisfy the DICC provision's enforcement requirement, and therefore the Company would not would not respond to the costs associated with separating the Hospital's normal and emergency electrical power systems. FMI SUMF ¶¶ 19–20.

On February 27, 2018, Robert Frey, PHS's insurance broker, sent an e-mail to FMI in which Mr. Frey claimed that PHS had met its burden of proof through PHS's submission of material from the New Mexico Department of Health. *Id.* ¶ 21. On July 12, 2018, FMI sent a letter to Mr. Frey stating that FMI's coverage position remained unchanged. *Id.* ¶ 22. On February 7, 2019, Mr. Frey sent an email to Jeffrey Casillas, FMI's Vice President and Los Angeles Operation Claims Manager, that discussed comments from John Heck, one of the engineers hired by PHS. *Id.* ¶ 23. FMI forwarded Mr. Heck's comments to its own retained consultant for review, but, on

---

[5] The Court will not address any portion of the claim not in dispute, such as "business interruption" portion of the claim or the portion relating to replacing physically damaged sections of the electrical system with like-kind equipment.

4

February 19, 2019, FMI ultimately reaffirmed its November 14, 2017 denial of liability. PHS SUMF ¶ 41; FMI SUMF ¶ 24.

### III. Parties' Cross-Motions for Summary Judgment

The sole question before the Court in deciding these cross-motions is whether it may determine, as a matter of law, the effect of the "time-to-sue" provision on this lawsuit. The FMI Motion argues that the time-to-sue provision bars all claims brought by PHS in this lawsuit because FMI did not waive the time-to-sue provision, nor is it estopped from asserting the provision as a defense. The PHS Motion argues that FMI waived any right it might possess under the time-to-sue provision and that PHS timely filed this lawsuit within the applicable statute of limitations period.

## LEGAL STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" if it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co*., 185 F.3d 1076, 1079 (10th Cir. 1999). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Herrera v. Santa Fe Pub. Schs*., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (quoting *Bacchus Indus., Inc. v. Arvin Indus*., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). Once the movant meets this burden, the party opposing a summary judgment motion "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

However, merely establishing the absence of genuinely disputed facts will not carry the day for the summary judgment movant.  The movant must also demonstrate that the applicable controlling law requires a decision in the movant's favor.  Conversely, to defeat summary

judgment, the nonmovant must articulate a viable legal theory entitling it to relief. *See Swanson v. Fields*, 814 F.Supp. 1007, 1010 (D. Kan. 1993) "The question. . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007)). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Becker*, 709 F.3d at 1022 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The parties' filing of cross-motions for summary judgment does not change this standard of review. *Burrows v. Cherokee Cty. Sheriff's Officers,* No. CIV.A. 00-3333-GTV, 2005 WL 1185620, at *1 (D. Kan. May 18, 2005) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 249 (6th Cir. 1991)). However, having determined that PHS prevails on its motion for partial summary judgement, the Court will view all facts underlying these cross-motions in a light most favorable to FMI.

## DISCUSSION

In diversity cases, the propriety of summary judgment will be evaluated using the Federal Rules of Civil Procedure but with references to the state's substantive law. *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060 n.13 (D.N.M. 2016) (quoting *C.F. Braun & Co. v. Oklahoma Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979)) (internal citation omitted). Whether FMI may assert the time-to-sue provision is a question governed by New Mexico contract law. *HB Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 1:17-CV-01132-WJ-SMV, 2019 WL 3502951, at *4 (D.N.M. Aug. 1, 2019).

"New Mexico law treats an insurance policy as an ordinary contract to be construed according to customary principles of contract interpretation." *Carolina Cas. Ins. Co. v. Nanodetex*

*Corp*., 733 F.3d 1018, 1022 (10th Cir. 2013) (citing *Rummel v. Lexington Ins. Co.*, 1997 -NMSC-041, ¶ 18, 945 P.2d 970, 976). In New Mexico, courts will generally honor time-to-sue provisions agreed to by parties to a contract. *Nez v. Forney*, 1989-NMSC-074, ¶ 7, 783 P.2d 471, 473. "[P]rovisions in insurance policies which limit the period within which suit may be brought after damage occurs are valid and enforceable if the time period is reasonable." *Young v. Seven Bar Flying Serv., Inc.*, 1984-NMSC-069, ¶ 8, 685 P.2d 953, 955. New Mexico courts have long held that one-year time periods are reasonable and, therefore, valid and enforceable. *See e.g., id.* (finding that one-year time-to-sue provision barred insured's claim); *Wiseman v. Arrow Freightways, Inc*., 1976-NMCA-067, ¶¶ 7, 10–11, 552 P.2d 1240, 1242 (same); *Turner v. New Brunswick Fire Ins. Co. of New Brunswick, N.J.*, 1941-NMSC-014, ¶ 6, 112 P.2d 511, 513 (same); *Elec. Gin Co. v. Firemen's Fund Ins. Co.*, 1935-NMSC-001, ¶¶ 2-4, 39 P.2d 1024, 1024–25 (same). However, an insurer can waive an otherwise enforceable time-to-sue provision either by express language or conduct. *Peoples State Bank v. Ohio Cas. Ins. Co*., 1981-NMSC-106, ¶ 11, 635 P.2d 306, 308.

Waiver "is the intentional abandonment or relinquishment of a known right." *Miller v. Phoenix Assur. Co., Ltd., of London*, 1948-NMSC-006, ¶ 8, 191 P.2d 993, 995. Waiver may be accomplished by slight acts and circumstances and must be determined by the facts of the case. *Peoples State Bank*, 1981-NMSC-106, ¶ 9 (internal citations omitted). New Mexico has long recognized that an insurer generally waives its time-to-sue defense if, during the limitations period, it engages in conduct or acts "which would lull the insured into reasonably believing that its claim would be settled without suit or which would render enforcement of a limitations defense unjust, inequitable or unconscionable." *Id.* (internal citations omitted).

    I.    **FMI waived its right to enforce the Policy' time-to-sue provision**

The PHS Motion argues that, by waiting fifty-one months to complete its review and cease adjustment activity, FMI waived its right to assert the twelve-month time-to-sue provision as a defense to this lawsuit. Doc. 51 at 12. The FMI Motion concedes that FMI continued to investigate PHS's claim long after the contractual limitations period had run. Despite this concession, FMI argues that the Court should conclude that FMI did not "waive" its time-to-sue defense solely because of the prolonged investigation period. Doc. 50 at 16–19. Rather, as FMI contends, the time-to-sue provision was "suspended" until FMI ceased its adjustment activity and denied the disputed portion of the claim. *Id.* FMI provides persuasive authority from other jurisdictions that stands for the proposition that, under normal circumstances, a time-to-sue provision in an insurance policy will not begin to run until the disputed claim is denied. *Id.* According to FMI, it did not waive the time-to-sue provision after denying liability and, because PHS failed to file its Complaint within twelve months of the November 14, 2017 denial, the lawsuit is still time-barred. *Id.* 20–23.

    A.  <u>The Court cannot predict that the New Mexico Supreme Court would suspend the time-to-sue provision until the date FMI denied liability</u>

In ascertaining and applying New Mexico contract law, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co*., 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

The New Mexico Supreme Court has not addressed whether a time-to-sue provision is tolled in the period between the insurer's notice of the claim and its denial. In *State ex rel. Udall v. Colonial Penn Ins. Co.*, the New Mexico Supreme Court acknowledged that other jurisdictions apply such a rule. 1991-NMSC-048, ¶ 11, 812 P.2d 777, 781 (citing *Solomon Lieberman and*

8

*Chevra Lomdei Torah v. Interstate Fire and Casualty Co.*, 768 F.2d 81 (3rd Cir. 1985); *Ford Motor Co. v. Lumbermens Mut. Casualty Co.*, 413 Mich. 22, 319 N.W.2d 320 (1982)). The New Mexico Supreme Court noted "[t]his rule has not achieved universal acceptance" and declined to express any opinion on the issue because it was not dispositive to resolving the case at hand. *Id.*

FMI gathers persuasive authority for its contention, and, in particular, it urges the Court to consider the decision of the Tenth Circuit in *Ins. Co. of N. Am. v. Bd. of Ed. of Indep. Sch. Dist. No. 12, Texas Cty., Okl.*, which predicted how the Oklahoma Supreme Court would rule on the issue. 196 F.2d 901 (10th Cir. 1952). The Tenth Circuit found that "[m]ost courts" have held that when an insurance company engages in negotiations beyond the time-to-sue period, this conduct "operates to suspend the running of the statute of limitation until a denial of liability, after which the insured is given a reasonable time to commence suit." *Id.* at 904. The opinion explains that if "the failure of the insured to bring suit within the prescribed time [is] due to the insurer's act or conduct—the limitation has not been fully and completely waived, in the strict sense of the word, but has only been suspended or extended, and begins to run when the insurer's conduct no longer excuses the insured's failure to bring suit." *Id.* at 903.

This "suspension model," as FMI argues, is consistent with the doctrine of equitable estoppel in other contexts. *See Doe 1 v. Espanola Public School*, Civ. No. 17-917 KK/LF, 2019 WL 586661 at *15 (D.N.M. Feb. 12, 2019) (holding that the "plaintiff must show that she filed suit within a reasonable time after termination of the conduct warranting estoppel" and that "the estoppel by inducement doctrine does not permit the indefinite and unlimited extension of the limitations period.") (quoting *Nolde v. Frankie*, 964 P.2d 477, 481-82 (Ariz. 1998) (en banc)); *see also McWaters & Bartlett v. U.S. for Use & Benefit of Wilson*, 272 F.2d 291, 297 (10th Cir. 1959)

(holding that plaintiff's suit was untimely where it was brought eleven months after end of conduct giving rise to estoppel in case involving construction bond).

The Court declines FMI's invitation to apply this doctrine, as there is no indication that the New Mexico Supreme Court would adopt this "suspension" rule. The Court must balance the persuasive authority offered by FMI against New Mexico's mandate that courts "cannot rewrite the contract of the parties to mean something it does not say." *Alvarez v. Southwestern Life Ins. Co., Inc.*, 1974-NMSC-049, ¶ 12, 523 P.2d 544, 547. The time-to-sue provision in the Policy is specific in requiring legal action to be brought within twelve months "after inception of the loss." FMI SUMF ¶ 3. "In the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot make a new agreement for the parties." *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 23, 943 P.2d 560, 569; *see also ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶23, 299 P.3d 844, 852 (the court's duty is "confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties."). Here, the language of the time-to-sue provision is clear and unambiguous.

FMI's request also appears incongruent with how New Mexico courts apply the waiver doctrine in the insurance context. The New Mexico Supreme Court emphasizes the equitable dimension of this doctrine in these cases. *See Peoples State Bank*, 1981-NMSC-106, ¶ 9 (acts giving rise to waiver might "render enforcement of a limitations defense unjust, inequitable or unconscionable."); *see also Green v. Gen. Acc. Ins. Co. of Am.*, 1987-NMSC-111, ¶ 12, 746 P.2d 152, 155 ("An insurer should not be allowed to induce an insured's participation in an investigation past the twelve month time-to-sue provision and then rely on that contractual provision to bar claimant's recovery."); *Miller*, 1948-NMSC-006, ¶ 11 (finding that "waiver may also arise by

10

putting the insured to trouble and expense" in case where insurance company waited to deny liability until after contractual limitations period expired). As further discussed below, FMI's conduct induced PHS to participate in investigating the disputed portion of the claim beyond the deadline provided by the time-to-sue provision.

The Court finds that, under New Mexico law, the time-to-sue provision in this case ran from August 31, 2013 – the date of the electrical fire at the hospital and the "inception of the loss" as that phrase is used in the time-to-sue provision – to August 31, 2014.

> B. <u>The Court finds that the undisputed material facts in this case support a finding that FMI waived the Policy's time-to-sue provision.</u>

The New Mexico Supreme Court has made clear that "[w]aiver may be accomplished by slight acts and circumstances, and must be determined by the facts of the case." *Peoples State Bank*, 1981-NMSC-106, ¶ 9 (internal citation omitted). The kinds of conduct that support "a waiver of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit, or which would render enforcement of a limitations defense unjust, inequitable or unconscionable." *Id.* (internal citation omitted).

In *Miller*, the New Mexico Supreme Court, after "a careful consideration of the evidence," found that an insurer waived its time-to-sue defense because it had induced the insured to delay filing suit. 1948-NMSC-006, ¶¶ 13–14. While still within the contractual period, the adjuster received the insured's consent to request records from the Bureau of Revenue, and then never followed up with the insured or made any effort to actually obtain the records. *Id*. Under these facts, the Court held that the insurance company's actions led the insured to reasonably believe that the twelve-month contractual limitations would not be enforced because the insured was still in the process of negotiating with the insurance company and had provided the company with further evidence supporting its claim. *Id*. At the time the contractual limitations period expired,

11

the insurance company's conduct indicated that its investigation was still ongoing and thus was inconsistent with retaining the right to use the period as a defense to a subsequent lawsuit.

In the *Peoples State Bank* and *Green* decisions, both of which involved a twelve-month time-to-sue provision, the New Mexico Supreme Court reaffirmed these principles. In *Peoples State Bank*, the court noted that an insurance agent's negotiation with the insured throughout the limitations period, which ultimately continued even after the period expired, could constitute waiver. 1981-NMSC-106, ¶¶ 9–11. In *Green*, the court found that there was substantial evidence to support the lower court's finding that the insurer's conduct waived the limitations provision by lulling the insured into reasonably believing that his claim for the loss sustained would be settled without suit. 1987-NMSC-111, ¶ 11. The lower court's finding was based on the insurer's communications, none of which "intimated that the claim would not be settled amicably." *Id.* The New Mexico Supreme Court pointed out that the insurer did not give any indication that it would deny coverage but instead told the insured that "if you will cooperate with us in investigating the facts surrounding the claim, this matter should be ready for resolution." *Id.* ¶ 12.

FMI investigated and considered the disputed portion of the claim both within the twelve-month time-to-sue period and for several years after it expired. During the time-to-sue period, from August 31, 2013 to August 31, 2014, FMI transmitted its preliminary measurement of loss and informed PHS that its measurement of the property damage claim was still continuing. More importantly, during this period FMI never denied liability, never stated that it would refuse to negotiate or cooperate with PHS, and never raised the Policy's time-to-sue provision as a limit as to when parties had to complete the adjustment of PHS's claim. On May 2, 2014, FMI requested that PHS provide documentation of an Authority Having Jurisdiction enforcing a law or ordinance against the Hospital. Doc. 50, FMI Ex. C. In a July 8, 2014 email, FMI stated that it had received

and reviewed PHS's May 8, 2014 submission of a Correction Notice from the City of Albuquerque. Doc. 50, FMI Ex. D. FMI requested a cover letter or explanation from the City describing how its Correction Notice satisfies the DICC provision. *Id.* at 2. The email ends with "Upon receipt of this information, we will promptly review and if we should have any questions we will notify you in writing." *Id.* at 3.

On August 21, 2014, approximately a week and a half before the time-to-sue period expired, FMI sent an email to Laura Crowe, PHS's Risk Manager. Doc. 51, PHS Ex. A-6. The email discusses a prior August 13th teleconference, at which the parties agreed to meet in September of 2014. *Id.* The email confirms the September meeting and states:

> With regards to the correction entitled "Presbyterian Hospital Correction Notice For: Frank Vinke Energy Center 1012 Silver" that we received on May, 08, 2014, we agreed to table this item for further discussion during our September 2014 meeting. In the interim, we have asked out Electrical Consultant, Mr. John Meshnick with Evergreen Engineering, Inc. to investigate the meaning of the referenced codes as listed in the correction notice. If we should have further questions regarding the six (6) corrections notice items, we will contact you.

*Id.* at 1–2. The email ends with the following: "With regards to the property damages portion of the claim, we are notifying you that our measurement of loss in [sic] continuing." *Id.* at 2.

At this point, FMI knew there could be an issue with PHS's submission of supporting documentation; this is made clear by the July 8, 2014 request for an "explanation" from the City of Albuquerque. Despite the readily apparent issues with the claim, FMI gave PHS every reason to continue to cooperate with FMI instead of filing suit before the limitations period expired.

FMI argues that its conduct never amounted to waiver of the time-to-sue provision because PHS knew that coverage under the DICC provision was contingent on it submitting appropriate documentation and FMI never told PHS, or even insinuated, that the disputed portion of the claim would be settled without resorting to a lawsuit. However, the correspondence discussed above

shows that FMI's conduct, in essence, precluded PHS from bringing the dispute into court within the limitations period. At the time the limitations period expired, FMI's consultant was reviewing the Correction Notice offered by PHS. At a minimum, the August, 21, 2014 email instructs PHS to wait until after the time-to-sue deadline had expired to learn whether FMI considered the Correction Notice to be proper supporting documentation. FMI's argument might have been better supported had it given PHS a warning that the limitations deadline was approaching, but none of the correspondence refers to the Policy's time-to-sue provision.

Based on these facts, the Court finds that FMI engaged in voluntary conduct by which it relinquished its right to assert the time-to-sue provision as a defense against PHS's lawsuit. FMI lulled PHS into reasonably believing that it would not have to resort to a lawsuit. This finding of waiver is further supported by FMI's subsequent conduct after the time-to-sue period expired. Correspondence from the first half of 2015 shows that PHS continued to submit documentation of applicable codes and standards, which FMI promptly reviewed, and the parties continued to discuss the disputed portion of the claim at length. *See* Doc. 51, PHS Exs. A-7, A-8, A-9..

On May 15, 2015, FMI even sent Ms. Crowe an email "outlin[ing]" the status of our *continued* investigation into the code requirements that reportedly necessitated [PHS] to physically separate the normal and emergency electrical equipment systems involved in the captioned loss." Doc. 51, PHS Ex. A-10 (emphasis added).

### II.  PHS Timely Filed Suit Within the Applicable Limitations Period

As discussed at length above, FMI waived its right to enforce the Policy's time-to-sue provision so FMI cannot alter or amend when and how the provision's twelve-month limitations period will run. Consequently, the claims brought by PHS are governed by the applicable statutes of limitations. *See Green*, 1987-NMSC-111, ¶ 12 ("[T]he twelve months time-to-sue provision

14

having been waived, it would have been unnecessary that suit be instituted within twelve months next after the loss, or at any other time except within the statute of limitations.") (quoting *Miller*, 1948-NMSC-006, ¶ 16).

Under New Mexico law, the statute of limitations for a claim based on breach of a written contract is six years. NMSA 1978, § 37-1-3(A). PHS's claim for breach of the implied covenant of good faith and fair dealing arises from the breach of a written contract, and thus is governed by the same six-year limitations period. *See Id*. PHS filed this lawsuit on August 30, 2019, within six years of the August 31, 2013 inception of loss. PHS's claims under both the New Mexico's Insurance Code and the New Mexico Unfair Practices Act are governed by a four-year limitations period. *See Martinez v Cornejo*, 2009-NMCA-011, ¶ 44 208 P.3d 443 (Insurance Code); *Nance v. L. J. Dolloff Assoc*., Inc., 2006-NMCA-012, ¶ 22, 126 P.3d 1215 (Unfair Practices Act). Both causes of action accrued in November of 2017 when FMI made clear its intention to cease its adjustment activity and close its file. PHS SUMF ¶ 40. Accordingly, all claims brought by PHS in this lawsuit were timely filed.

## CONCLUSION

Here, the undisputed facts establish that FMI engaged in conduct that waived the Policy's twelve-month time-to-sue provision. This finding allows the Court to conclude that, as a matter of law, PHS timely filed the present lawsuit.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE